UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------X
MAURICE GRUNBERG,

        Plaintiff,              <u>MEMORANDUM AND ORDER</u>

   -against-                Civil Action No.
                                      CV-00-4124 (DGT)

BOARD OF EDUCATION FOR THE CITY
SCHOOL DISTRICT OF THE CITY OF
NEW YORK; THE OFFICE OF THE
SPECIAL COMMISSIONER OF
INVESTIGATIONS FOR THE NEW YORK
CITY SCHOOL DISTRICT; and THE
CITY OF NEW YORK,

        Defendants.

-------------------------------X

Trager, J:

    The Board of Education for the City School District of the
City of New York, the Office of the Special Commissioner of
Investigations for the New York City School District, and the
City of New York (together "defendants") have filed a motion for
summary judgment on Maurice Grunberg's ("Grunberg" or
"plaintiff") federal claims that he was denied procedural due
process and procedural due process in violation of the Fourteenth
Amendment to the United States Constitution under 42 U.S.C.
§ 1983 and his state law claims of defamation and breach of
contract.  Plaintiff has withdrawn his state law defamation
claims.  Therefore, summary judgment is granted as to that claim.

## Background

## (1)

Maurice Grunberg was hired by the Board of Education ("BOE") as a teacher in September 1969, and appointed an Educational Evaluator in 1988. Kousoulas Dec. Ex. 3, Grunberg Dep. ("Grunberg Dep.") at 24-25. As an Educational Evaluator, Grunberg worked as a member of a support team for students in the special education program in District 23. Id. Grunberg received satisfactory reviews and maintained an excellent professional reputation. Grunberg Aff. ¶ 6.

### a. The 1991 Arrest and Settlement

In December 1991, the BOE learned that Grunberg had been arrested on February 22, 1991 in a park for "abusive sexual contact" with an undercover U.S. Park Service park ranger. Grunberg Aff. ¶ 8. Grunberg paid the fine associated with the summons he received, and was later told that payment was the equivalent of a guilty plea.[1] Grunberg Aff. ¶ 8.

---

[1] Although both sides characterize this payment as a guilty plea, Grunberg has stated that he did not believe that he was pleading guilty at the time he paid the fines, but instead believed it was like "a parking ticket." Grunberg Aff. ¶ 8. Indeed, the ticketing and fine process described here has been found to violate due process in a similar context because the violation notice failed to provide adequate notice of a conviction. See Dean v. United States, 05-cv-1496, 2006 WL 456489 (E.D.N.Y. Feb. 27, 2006) (Trager, J.). As the violation notice in this case is not in evidence and the defendants were

Plaintiff and defendants contest whether plaintiff was obligated to inform defendants of the arrest. As evidence that Grunberg should have provided information to his employer of the arrest, defendants have provided a regulation for the City School District for the City of New York which states:

> Any employee of the Board of Education who has been arrested and charged with a felony, misdemeanor or violation must immediately notify the OPI [Office of Personnel Investigation] in writing.

Klepfish Decl., Ex. J, Chancellor's Regulation C-105. However, this version of the Chancellor's Regulation went into effect on March 23, 1992, a year after Grunberg's 1991 arrest. Id. Grunberg disputes that he was obligated to inform the BOE of the arrest.

In any case, after the BOE became aware of the arrest, the BOE Office of Legal Services ("OLS") investigated the arrest and in July 1992 negotiated a settlement with Grunberg which allowed him to remain in his position as an Educational Evaluator. Klepfish Decl., Ex. F, G. Under the terms of the agreement, Grunberg admitted that he had been convicted of the charge and that the arrest and conviction constituted "conduct unbecoming the position of an educational evaluator." Klepfish Decl., Ex. G. Grunberg "commit[ed] never to engage in such conduct in the future" and to pay a $500 fine. Id. In exchange, the BOE agreed

_____

also concerned with arrests, not only convictions, those due process concerns are not at issue in this case.

3

not to bring disciplinary charges against Grunberg for the
conviction.  Id.

In addition to these provisions, the agreement had two
provisions related to its confidentiality:

> 9.  Copies of this settlement may be maintained by the
> Chancellor, the Office of Legal Services, and the Executive
> Director of Special Education.  No other copy will be on
> file nor shall a copy follow Respondent to his assigned
> school.
>
> 10.  This stipulation and its contents will be treated as
> confidential and not released to anyone except as required
> by law.

Id.  The agreement could be used in assessing a penalty, if
Grunberg were later found guilty of violating Education Law
§ 3020-a.  Id.  The agreement was signed by Grunberg, his
attorney, the Chancellor for the BOE and the attorney for the
Board of Education.  Id.


**b.  Grunberg's Discrimination Complaint and the Abuse Accusation**

Grunberg continued to work as an Educational Evaluator after
signing the agreement without incident for five years until 1997.
In November 1997, Grunberg complained to the school district that
another employee, Khalema Mohamed called him "Mr. Jew" at work.
Grunberg Aff., Ex. 1.  After an investigation, the Local Equal
Opportunity Coordinator wrote Grunberg summarizing its findings:

> [Community School District] 23 has reviewed the statements
> and evidence you presented as well as the statements of
> witnesses.  Based on your allegations and the evidence
> obtained during the investigation, it is determined that

there is reasonable cause to find that you were referred to as "Mr. Jew". [Mohamed] will be reprimanded.

Id. On August 14, 1998, Mohamed received a formal written reprimand from the Local Equal Opportunity Coordinator in a letter which described her statement as "both insensitive and unfortunate." Id. The letter further stated that such comments "will not be condoned in our schools" and "any repeat of this conduct will result in appropriate disciplinary action." Id.

On November 24, 1997, prior to this formal reprimand, but after Grunberg had made his initial complaint about the anti-Semitic comment, Mohamed accused Grunberg of putting his hand on the shoulder of a six year old first grade student at the school and insinuated that the touch was inappropriate. Klepfish Decl., Ex K. This accusation prompted an investigation by the New York City School District Special Commissioner of Investigation ("SCI") which was assigned to Investigator Louis Torrellas, a former New York City Police Officer. Kousoulas Decl, Ex. 4 ("Torrellas Dep.") 5-7. As a result of the allegation, on November 25, 1997, Grunberg was removed from his position in the school, and assigned to the Brooklyn East Regional Office of the Board of Education. Klepfish Decl., Ex. L.

In addition, the mother of the student was notified by letter that an investigation was taking place because of an accusation of "unethical or suspicious conduct" and that the employee was being transferred out of the school "[u]ntil this

matter has been fully investigated." Grunberg Aff., Ex. 5.
Grunberg was not identified in this letter. Id.

As a result of the transfer to the Brooklyn East Regional
Office, Grunberg was no longer eligible for per session
assignments which he had previously been assigned because of his
seniority. Grunberg Aff., Ex. 11. Per session work is work
available outside of the regular school day such as evening
school or summer school and is assigned based on criteria set out
in the union contract. Id. Grunberg's loss of this additional
work resulted in a commensurate loss of salary: approximately
$14,000 per year. Grunberg Aff. ¶ 25. In addition, Grunberg was
assigned "menial" secretarial tasks rather than doing the
substantive work he had enjoyed as an educational evaluator.
Grunberg Aff. ¶ 23.

On November 25, 1997, a day after the allegation, Torrellas
interviewed Mohamed. Torrellas Dep. 12. According to Torrellas'
report, she stated that she had seen Grunberg standing close to
the student on a stairwell with his left arm around the student's
shoulders. Id., Ex. 6. He also interviewed the student who said
"that he had no problem with Mr. Grunberg." Id. at 13.
Torrellas further reported that the assistant principal said he
had seen Grunberg standing next to the student near the same time
that Mohamed had described. Id., Ex. 6. According to the report
the student "did not look upset and [the assistant principal]

went on about his business." Id.

On December 16, 1997, Grunberg's supervisor Shlomo Fleminger wrote a letter to the SCI to inform the agency of the previous complaint that Grunberg made against Mohamed, noting that Grunberg had complained about her prior to filing his written complaint and noting that he "regret[ted] that [he] did not advise Mr. Grunberg to file a complaint with OEO immediately." Grunberg Aff., Ex. 3. Fleminger went on to state:

> I find it too coincidental, as a matter of fact it is downright suspicious, that of all the people in the school, Ms. Muhammad [sic] is the one that noted such an event. . . . I firmly believe that you cannot, and must not, accept Ms. Muhammad's [sic] allegation without consideration of her prior relationship with Mr. Grunberg. . . . There is sufficient reason to believe that Ms. Muhammad [sic] might have a hidden agenda behind her allegation.

Id.

After completing his investigation, Torellas ultimately determined that the allegation was "unsubstantiated." Klepfish Decl., Ex. K. Grunberg was never brought up on charges, or in other ways disciplined for this incident.

During Grunberg's April 1998 interview by Torrellas, he was informed that the allegation was unsubstantiated. Grunberg Aff. ¶ 22. This interview is apparently the last piece of investigation that in any way dealt with Mohamed's allegation. However, despite the fact the investigation of that charge was complete, neither the investigator, nor SCI informed anyone at the BOE that Grunberg had been cleared of the accusation. Id.

7

¶ 28.

Due to the "cloud of suspicion of sexual impropriety involving a six year old student," Grunberg decided to take an academic sabbatical for the 1998-1999 school year, resulting in a 70 percent reduction in salary. Id. ¶ 27. The investigation into the November 1997 allegation abuse was not resolved during the school year while Grunberg was on sabbatical.

Grunberg asked his union representative, Avi Lewis, several times about the status of the investigation. In May 1999, Grunberg told Lewis that during Grunberg's interview with Torrellas, he was told that the allegation was unsubstantiated. Grunberg Aff. ¶ 28. On June 3, 1999, Lewis wrote Grunberg to inform him that he had asked the district office whether Grunberg could return to the school since the allegation was unsubstantiated. Grunberg Aff., Ex. 4. In the letter Lewis stated that he "was told that they are not aware of the investigation into the allegations against [him] having been concluded, and that therefore, their current expectation was that [Grunberg] would continue to be assigned to an office position." Id.

c. **Discovery of Additional Arrests**

Torrellas' investigation had led to other information which he continued to investigate after his inquiry into Mohamed's

accusation was complete.  After receiving the case, Torrellas

requested a criminal background check on Grunberg.  Torrellas

Dep. 17.  This background check revealed that Grunberg had been

arrested on occasions other than the February 21, 1991 arrest.

He had been arrested three times for public lewdness prior to the

settlement agreement, with two of the arrests resolved by paying

a fine, and with one resolved by dismissal.[2]  Klepfish Decl., Ex.

B, Ex. C., Ex. D, Ex. M.  The Board of Education was not aware of

these arrests when it entered the July 1992 settlement.  Pl.'s

Counter-statement Pursuant to Local Civ. R. 56.1 ("Pl.'s 56.1

Stmt.").  In addition, the report showed that Grunberg had been

arrested again after he entered the settlement.  Klepflish Decl.,

Ex. I.  This last arrest, on March 24, 1993, was for public

lewdness and was ultimately dismissed.  Id.  Each of these

arrests took place on federal property and the arrests were made

by members of the United States Park Service.

     While investigating these arrests, the office of the New

York City School District Special Commissioner of Investigation

("SCI") and the BOE Office of Legal Services ("OLS") had a

conflict over whether SCI should have access to the July 1992

settlement agreement.  Klepfish Decl., Ex. M.  Torrellas first

---

     [2]  He was arrested on November 19, 1988 and paid a fine
(Klepfish Decl., Ex. B),  September 29, 1989, a charge that was
ultimately dismissed (Id., Ex. C, Ex. M), on May 14, 1990, which
he resolved by paying a fine (Id., Ex. D, Ex. M).

requested a copy of the agreement on December 19, 1997. Torrellas Dep., Ex. 6. OLS initially claimed that it could not find a copy of the settlement agreement. <u>Id.</u> On March 21, 1998, an attorney from OLS informed SCI that Grunberg's union would provide a copy of the stipulation if Grunberg consented. <u>Id.</u> Eventually, on June 17, 1998, an attorney in the Human Resources Department of the BOE faxed SCI a copy of the agreement. After SCI received it, OLS located the document and refused to release it themselves, claiming that the settlement agreement was confidential. OLS argued that SCI was required to issue a subpoena before OLS could release it. Klepfish Aff., Ex. M.

SCI relied on an Executive Order and Board Resolution as the source of its right to view the confidential agreement. The Order states:

> [SCI] shall have authority to examine, copy or remove any document or other record prepared, maintained or held by the City School District fo the City of New York, including the Board of Education, the Chancellor, Community School Boards, Community Superintendents and any other officer or employee of the school district, except those documents or other record which cannot be disclosed according to law[.]

Klepfish Decl., Ex. H. Ultimately, SCI never issued a subpoena for the agreement, but did receive a copy from Howard Tames, the Executive Director of the Board of Education's Division of Human Resources. Torrellas Dep, Ex. 5, Iannozzi Dep. pp. 23, 25, 31.

On July 20, 1998, shortly after receiving the agreement, Torrellas wrote a report concluding the investigation. Torrellas

Dep, Ex. 3.  On October 1, 1998, SCI wrote the BOE with its
conclusions and recommendations based on the investigation.
Klepfish Decl., Ex. M.  The letter stated that SCI "did not
substantiate that the touching was inappropriate."  Id.  However,
it recommended that BOE terminate Grunberg for the multiple
arrests unknown at the time of the settlement and for failing to
report the 1993 arrest to the board.  Id.

The report also recommended that the BOE not include
confidentiality provisions in settlements resolving issues of
sexual misconduct.  Id.  The report specifically stated that "the
completion of our investigation was unnecessarily delayed and our
evaluation of evidence hampered when OLS refused to provide us
with a copy of the original stipulation and the Grunberg file."
Klepfish Aff., Ex. M.

No immediate action was taken by BOE, and Grunberg was not
made aware of the letter.  When SCI wrote the letter, Grunberg
was on the year-long sabbatical.  When Lewis, his union
representative inquired about the status of the investigation in
June 1999, he was not informed of the completion of the
investigation or of this letter.


**d.  The 1999 Arrest and New York Post Article**

Neither the BOE or SCI took additional steps in either the
investigation or instigating disciplinary procedures during the

year that Grunberg was on sabbatical.  A few weeks after
receiving the June 3, 1999 letter from Lewis, which informed
Grunberg that the investigation into Mohamed's accusations was
still ongoing, Grunberg was arrested again.  This June 22, 1999
arrest was for allegedly making sexual contact with an undercover
United States Park Police Officer and initially giving a false
name to the officer.  Grunberg Aff. ¶ 30.  Grunberg did not
notify any of the defendants of the arrest because an article
published in the June 24, 1999 edition of the <u>New York Post</u> made
it very clear that BOE and SCI were aware of the arrest.
Grunberg Aff. ¶ 31, Ex. 6.

   The article, titled "Special-ed teacher is charged with
groping cop," included sections of an interview from Ed Stancik
and cited the October 1, 1998 letter from SCI to the BOE and
referenced the investigation into Mohamed's accusations.  <u>Id.</u>
The article also specifically referenced the confidential
agreement.  The article stated:

> A Brooklyn teacher kept on by the Board of Education despite
> a history of arrests for lewd conduct was busted this week
> on charges he groped the groin of an undercover cop – and
> gave a false name, The Post has learned.
>
> Maurice Grunberg, 54, was arrested Tuesday after he
> allegedly walked up to an undercover officer and grabbed his
> genitals, said Lt. David Buckley of the U.S. Park Police.
> Grunberg has managed to hold on to his job as a tenured
> special-ed teacher at PS 183 in Brownsville despite a string
> of four arrests, according to special schools investigator
> Ed Stancik.
>
> In 1988 and 1989, he was arrested for masturbating in public

and charged with public lewdness.  In 1990, he was charged
with masturbating in public.  But in 1991, the Board of Ed
allowed Grunberg to keep his job even after learning of the
three arrests, according to a letter from Stancik to Schools
Chancellor Rudy Crew.  Board lawyers let Grunberg off the
hook with just a $500 fine - and promised to keep the
details of his arrest confidential to protect his career.

Eight months later he was arrested a fourth time for
masturbating in public with another man near the Carnarsie
pier.  He also failed to report that arrest to the board as
required, officials said.  Last year Stancik's office
investigated allegations he touched a 6-year-old boy at PS
183.  Despite being cleared, he was removed from contact
with kids.  Board of Ed officials said yesterday the school
system is finally filing charges to fire him.

Grunbergs' latest arrest occurred near Brooklyn's Plumb
Beach in the Gateway National Recreation Area, where cops
said they've had a problem with men exposing themselves.
he was charged with abusive sexual contact, as well as
refusing to obey a lawful order and giving a false name -
telling cops he was "Marty Markowitz."  Grunberg told The
Post last night he was entrapped, a defense he had claimed
in the past.  He said he was only "flirting."  "I feel like
a bug in a spider's web.  I feel like prey," he said.
"They're the hunter, I'm the prey."

Grunberg Aff., Ex. 6.  Commissioner Stencik, who was in charge of

SCI, was the only person with the authority to disclose

information about investigations to the media.  Kousoulas Decl.,

Spencer Dep. 17.

After the publication of the article, plaintiff was referred

to as a "faggot," pervert," and "child molester" by his neighbors

and colleagues.  Grunberg Dep. 63.  Grunberg soon also faced

other results of the publication.

When the article was published, Grunberg was still on

sabbatical, preparing to travel to Madrid, Spain as part of the

13

academic enrichment program of his sabbatical.  On July 1, 1999,
administrators at Kingsborough Community College forced him to
withdraw from the program and would not allow him to travel to
Spain with the other students.  Grunberg Aff., Ex. 7; Grunberg
Dep. 53.  As a result, he did not graduate from the program.  <u>Id.</u>
The administrators told him it was because they became aware of
his arrest.  Grunberg Dep. 53.

On September 7, 1999, Grunberg was advised that charges were
preferred against him under 3020-A of the Educational Law and
that he was removed from his assignment as an Educational
Evaluator.  Klepfish Decl., Ex. O.  Grunberg received "Charges
and Specifications" outlining the reasons he faced termination.
The Specifications noted five acts which were the subject of the
charges: (1) his March 24, 1993 arrest; (2) his failure to notify
the BOE of his arrest; (3) his June 22, 1999 arrest; (4) his
failure to notify the BOA of that arrest and (5) his violation of
the July 1992 stipulation agreement in which he "committed never
to engage in public lewdness in the future."  Klepfish Decl.,
Ex. P.

Plaintiff now disputes that he in fact engaged in any of the
activity in the underlying arrests, noting that the charges
underlying the 1993 arrest were dismissed and that the 1999 case
was still pending.  However, at the time, rather than challenge
these accusations in the BOE's administrative process, plaintiff

14

decided to retire, effective July 1, 2001.  He remained at the
Brooklyn East Regional office at the same reduced pay rate until
that date.  The BOE did not pursue the charges because of his
approaching retirement.

Even after he retired, Grunberg still had to face the
effects of the article.  Prior to a meeting of his cooperative
board, someone posted copies of the article with a note:

> Have you forgotten that last summer this "neighbor" has been
> arrested (more than once) for masturbating in public, lewd
> and lacivious behavior (propositioning a Park Police
> Officer) and last but not least, accused of molesting a
> child?

Grunberg Aff., Ex. 8.  At the subsequent board meeting, Grunberg
heckled by other shareholders who accused him of being a
pedophile.  Grunberg Aff. ¶ 41.

## Discussion

### (1)

Plaintiff alleges that defendants' actions violated his
right to procedural due process, violated his substantive due
process rights, and breached the confidentiality provisions of
the 1992 settlement agreement.

**a.  Procedural Due Process**

**i.  Liberty Interest**

In order to establish a violation of the due process clause, the plaintiff must identify a constitutionally protected liberty or property interest.  Board of Regents v. Roth, 408 U.S. 564, 569 (1972).  "A government employee's constitutionally protected liberty interest is implicated when the government, in terminating the employee, imposes upon the employee a stigma which restricts his or her ability to obtain future employment." McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 280-81 (2d Cir. 1999) (citing Brandt v. Board of Coop. Educ. Servs., 845 F.2d 416, 417 (2d Cir. 1988)).  Defamation alone will not suffice; it must be in conjunction with the deprivation of a tangible interest such as termination or, possibly, a demotion. Brandt v. Board of Cooperative Educ. Services., 820 F.2d 41, 45 (2d Cir. 1987) (finding termination of employment a tangible interest); Baden v. Koch, 799 F.2d 825, 830 (2d Cir. 1986) (finding demotion creating at best "a weak liberty interest"). Furthermore, the plaintiff must allege that the stigmatizing comment is not true.  Codd v. Velger 429 U.S. 624 (1977).

The publication of the June 24, 1999 article in the New York Post was not concurrent with the deprivation of any tangible interest held by plaintiff.  See Martz v. Incorporated Village of Valley Stream, 22 F.3d 26, 32 (2d Cir. 1994) (defamatory remarks

made five-months after termination were too attenuated in time to give rise to a liberty interest violation); c.f. Patterson v. City of Utica, 370 F.3d 322, 335 (2d Cir. 2004) (finding a publication was in conjunction with termination when made within one week of termination).  At the time of the publication, Grunberg was still on his academic sabbatical, as he had been for a full year.  A few weeks before the publication of the article, his union representative had communicated to him that he would again be placed in an administrative position during the next school year.  The only concurrent action by the Board of Education was to state publicly that "the school system is finally filing charges to fire him."  Grunberg Aff., Ex. 6.  The charges were not in fact filed until September 9, 1999, two months later and charges alone are not sufficient to constitute a tangible interest.  Grunberg was never terminated and did not leave the employ of the Board of Education until nearly two years later, when his retirement commenced.

In addition, in order to establish a liberty violation, the plaintiff must also allege that the stigmatizing information is not true.  Codd v. Velger 429 U.S. at 627-8 (finding that plaintiff must "challenge the substantial truth of the material in question").  Generally, the remedy for a violation of one's liberty interest is the opportunity to have hearing to clear one's name.  Brandt, 820 F.2d at 43-44.  The allegations

described in the article involved stigmatizing topics.  <u>Valmonte</u>
<u>v. Bane</u> 18 F.3d 992 (2d Cir. 1994) (finding allegations of child
abuse stigmatizing).  However, plaintiff does not argue that the
actual statements made in the article are false.  The article
stated that Grunberg had been cleared of allegations of child
abuse.  It also accurately stated that he had been arrested five
times.  Plaintiff does not contest these facts.

Plaintiff argues that the article gave the "impression that
plaintiff is a pedophile who should not be in contact with
children," citing to <u>Quinn v. Syracuse Model Neighborhood Corp.</u>
for the proposition that a "subtle campaign" which leaves a
stigmatizing impression is sufficient for creating a liberty
interest.  613 F.2d 438, 446 (2d Cir. 1980).  In <u>Quinn</u>, however,
the defendants, through the media, made explicit accusations that
the plaintiff had engaged in criminal activities.  <u>Id.</u>  Here, the
statements were never explicit.  While the article played upon
negative stereotypes about gay men, it did not make any
explicitly false statements.  A public hearing would not satify
plaintiff's concern because the main issue that he would wish to
contest, the allegation of abuse, was already denied in the
article.  In any case, after being brought on charges regarding
the arrests, plaintiff had the opportunity to disprove them, but
instead decided to withdraw from the process and take early
retirement.

The defendants, possibly because of an internal power struggle between the BOE and SCI, left plaintiff in a position where he was exposed to the ridicule of his neighbors and educational colleagues well past when Mohamed's allegations were deemed unfounded. The allegations of child abuse, first made by a woman likely seeking to retaliate for a discrimination complaint, then disproved by the school, were given new life when SCI announced them coupled with the information about Grunberg's arrest record. However, as there was no defamatory statement coupled with the denial of a concrete interest, Grunberg's liberty interests were not implicated.

### ii. Property Interest

Plaintiff also argued that he had a property interest in per session work that was denied without procedural due process. In order to establish a constitutionally recognized property interest in an employment benefit, the employee's contract should be examined. <u>Perry v. Sinderman</u>, 408 U.S. 593, 601 (1972); <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 314 (2d Cir. 2002). In this case, while plaintiff's contract does require that per session work be assigned by seniority, the contract does not guarantee that an employee will be assigned such work. Grunberg Aff., Ex. 11. Without a guarantee, the potential assignment of this overtime work does not rise to the level of a

constitutionally protected property interest.  <u>Cassidy v.
Scoppetta</u>, 365 F. Supp. 2d 283, 287 (E.D.N.Y. 2005) (finding no
property interest in overtime work); <u>Caniello v. City of New
York</u>, 2001 WL 11061, *1 (S.D.N.Y. Jan. 4, 2001) (finding no
property interest in overtime pay where plaintiff was removed
from regular position pending investigation of criminal charges);
<u>Boyd v. Schembri</u>, 1997 WL 466539, *3 (S.D.N.Y. Aug. 13, 1997)
(finding denial of overtime work did not trigger procedural due
process protection).

   As Grunberg did not have liberty or property interests which
were denied without due process, defendants' motion for summary
judgment on his procedural due process claim is granted.


**b.  Substantive Due Process**

   Plaintiff claims that his right to substantive due process
was violated by his placement in an administrative office without
meaningful duties or the pay bonus for per session work.  In
order to establish a substantive due process claim, plaintiff
must identify the constitutional right at stake.  <u>Chavez v.
Martinez</u>, 538 U.S. 760, 775-76 (2003) ("[requiring] a careful
description of the asserted fundamental liberty interest for the
purposes of substantive due process analysis"); <u>O'Connor v.
Pierson</u>, 426 F.3d 187, 200, n. 6 (2d Cir. 2005) ("There is, of
course, no substantive constitutional right to be free from

arbitrary government action as such[.] ... The right, to the
extent it exists, is the right to be free of arbitrary government
action that infringes on a protected right.").

Plaintiff has failed to identify a protected right.
Assuming that plaintiff intended to argue that this denial of per
session work implicated a property right, summary judgment is
granted because, as discussed above, there is no property right
for per session work.

Grunberg also alleges that the disclosure of the terms of
the confidential settlement agreement violated substantive due
process.  Again, he has not identified the constitutional right
implicated.  "Clearly, it is the interpretation of a contract
term that is at issue here and the [plaintiff has] pursued this
contract dispute in the district court under the guise of a due
process violation.  A contract dispute, however, does not give
rise to a cause of action under section 1983."  Costello v. Town
fo Fairfield, 811 F.2d 782, 784 (2d Cir. 1987); see also Alberti
v. County of Nassau, 393 F. Supp. 2d 151, 163 (E.D.N.Y. 2005)
(denying substantive due process claim based on implied
employment contract); Chaffer v. Board of Educ. of the City of
Long Beach, 229 F. Supp. 2d 185 (E.D.N.Y. 2002) (denying
substantive due process claim based on union contract).  As the
violation of a contract provision does not give rise to a
protected interest under substantive due process, summary

judgment is also granted on this claim.

**c.  State Law Claims**

As summary judgment has been granted as to all of
plaintiff's federal claims, supplemental jurisdiction is
discretionary and rarely appropriate.  <u>See</u> 28 U.S.C.A. § 1367(c);
<u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 348, 351-53, n. 7
("in the usual case in which all federal-law claims are
eliminated before trial, the balance of factors to be considered
under the pendent jurisdiction doctrine – judicial economy,
convenience, fairness, and comity – will point toward declining
to exercise jurisdiction over the remaining state-law claims");
<u>Grace v. Rosenstock</u>, 228 F.3d 40, 55 (2d Cir. 2000) (refusing to
remand state law questions to the district court once federal
claims were resolved).

As all of plaintiff's federal claims have been dismissed,
pendant jurisdiction over the state law claims is denied.

## Conclusion

Defendant's motion for summary judgment is granted as to plaintiff's procedural due process, substantive due process, and state law defamation claim. Plaintiff's remaining state law claim for breach of contract is dismissed without prejudice. The Clerk of the Court is directed to close this case.

Dated: Brooklyn, New York
       March 30, 2006

                         SO ORDERED:


                         _/s/_____
                         David G. Trager
                         United States District Judge